UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ALLAN WALKER,<br><br>     Plaintiff,<br><br>          v.<br><br>WEXFORD, et al.,<br><br>     Defendants. | CAUSE NO. 3:20-CV-1020-JD-MGG |

OPINION AND ORDER

Allan Walker, a prisoner without a lawyer, filed an amended complaint alleging that he has received inadequate medical care for injuries to his hip. ECF 6. "A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). However, pursuant to 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

I. FACTUAL BACKGROUND

Walker alleges that defendant Dr. Merondit performed surgeries on his left hip on February 7, 2019, and February 21, 2019.[1] ECF 6, ¶ 1-2. Walker alleges that the

---

[1] Walker's amended complaint alleges several different dates on which the surgeries occurred. However, Walker clearly alleges that Dr. Merondit performed two surgeries on him, and the court

surgeries were "unsterilized," and he suffered infections after both surgeries. *Id*. After the second surgery, he was placed on a wound vacuum[2], but it was discontinued on March 1, 2019, because "Wexford refused to pay for any more." ECF 6, ¶ 2. On March 13, 2019, he "became septic from the surger[ies]" and was sent to the hospital until March 19, 2019. *Id.*, ¶ 3. On April 6, 2019, he went back to the hospital, where a doctor told him he had a "bone-eating infection." *Id*. However, it is not clear what treatment Walker received at the hospital on April 6, or what his condition was when he returned to the prison.

After his return from the hospital, nurse practitioner Kim Myers and two doctors, Merondit and Keenzly, treated Walker. At some point after his return, Walker woke up and found his left leg was "twisted and shorter than my right leg." *Id.*, ¶ 4. An x-ray was ordered and Dr. Keenzly reported that there was nothing wrong with Walker's leg or hip. *Id*. Walker was in pain, and could not sit up, dress himself, or shower. *Id.*, ¶ 5-6. He requested pain medication from Myers, Dr. Merondit, and Dr. Keenzly, but was denied. *Id.*, ¶ 6. He filed grievances against them, but these were denied by LeeAnn Ivers, the head of nursing. *Id*.

On July 1, 2020, another hip surgery was performed by an "outside surgeon." *Id.*, ¶ 8. Walker was sent back to the prison with instructions for pain medication, physical

---

interprets the dates of those surgeries in the manner most consistent with the timeline of Walker's allegations. *See* ECF 6, ¶ 1-3.

[2] A wound vacuum decreases air pressure on a wound, which "can reduce swelling, and may help clean the wound and remove bacteria." *See* Johns Hopkins Medicine, "Vacuum-Assisted Closure of a Wound," https://www.hopkinsmedicine.org/health/treatment-tests-and-therapies/vacuumassisted-closure-of-a-wound (last accessed March 2, 2021).

therapy, and regular changing of bandages. *Id.*, ¶ 9. Myers, Dr. Merondit, and Dr. Keenzly continued to disbelieve Walker's complaints of pain. *Id.* Walker alleges that he never received pain medication or physical therapy, and his bandages were changed intermittently. *Id.*

Walker also alleges that he was effectively prevented from cleaning himself for several days. On September 29, 2020, Walker advised the medical staff that he could not clean himself in the shower because he could not bend or stand. *Id.*, ¶ 12. He asked for a small tub so he could bathe himself in bed, but was denied. *Id.* Between September 29 and October 9, 2020, nurses Shalana Seifert and Vernie Fanning[3] refused to change Walker's bandages, change his bedding, or provide him supplies to bathe himself in bed, per Ivers's orders. *Id.* at 10-11.[4] During this time, he lay in a soiled bed as wounds on his hip and buttocks became infected and drained. *Id.* at 11.

## II. EIGHTH AMENDMENT CLAIMS

Walker alleges Eighth Amendment claims against all defendants for failing to provide adequate medical care. For medical professionals to be held liable for deliberate indifference to an inmate's medical needs, they must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the

---

[3] Walker accuses nurses Jena Schlarf and Pamela Cool of the same conduct, but neither is named as a defendant.

[4] After Paragraph 12, the amended complaint ceases to use numbered paragraphs. Where the relevant paragraphs are not numbered, the court cites to the page numbers of the amended complaint.

decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008).

However,

> medical professionals are not required to provide *proper* medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards. There is not one *proper* way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. The Constitution is not a medical code that mandates specific medical treatment.

*Id.* (quotation marks, citations, parenthesis, and brackets omitted; emphasis added).

"[A] disagreement with medical professionals . . . does not state a cognizable Eighth Amendment claim . . . ." *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003). Courts "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019) (quotation marks and citation omitted).

Walker has alleged plausible Eighth Amendment claims against several defendants. After the first two surgeries, doctors Merondit and Keenzly and nurse Myers allegedly ignored Walker's complaints of pain and further injury, even though his leg was disfigured and he told them he was unable to sit up, bend, or walk. After the third surgery, they allegedly failed to provide Walker with pain medication and physical therapy prescribed by the surgeon, despite his ongoing complaints of pain. Between September 29, 2020 and October 9, 2020, nurses Seifert and Fanning, at the direction of Ivers, allegedly refused to change Walker's bandages or bedding, or provide a means for him to bathe, despite his infected wounds.

4

However, several of Walker's allegations do not state Eighth Amendment claims. Walker claims Dr. Merondit performed "unsterilized" surgeries, on the basis that they were performed in a unit with other patients. ECF 6, ¶ 1. Walker does not allege any other facts showing that the surgeries were "unsterilized," or that the conditions of the surgery itself caused his infections. The allegation that other people were present in the medical unit, and that Walker eventually developed infections, does not establish a plausible allegation that Dr. Merondit was deliberately indifferent to his safety while performing the surgeries. Accordingly, Walker may only proceed against Dr. Merondit based on his response to Walker's complaints of pain and injury after the surgeries, not the surgeries themselves.

Although the complaint names Nate, a physical therapist, as a defendant, Walker states he received "not one day" of physical therapy. *Id.*, ¶ 9. The complaint does not show how Nate was responsible for this decision, or if he was, that Nate perceived Walker to be at a risk of serious harm that Nate could have prevented. Nurse aide Gena S. is accused of confiscating a bathing tub from another inmate on September 29, 2020, so the inmate could not lend it to Walker. *Id.*, ¶ 12. Again, there is no allegation that Gena S. knew this would leave Walker at risk of serious harm.[5] These two defendants will be dismissed.

---

[5] Walker alleges that before Gena S. removed the tub, he had told an unnamed medical aide that he was unable to use the shower and needed a tub. ECF 6, ¶ 12. Even if Gena S. was the unnamed medical aide, the complaint still does not show that she was deliberately indifferent to a serious medical need. Walker alleges that Gena S. took the tub on September 29, 2020, which was only the first day he was allegedly unable to bathe. *Id.* Walker indicates that his wounds were infected by October 2, 2020, but there is no allegation that Gena S. was informed of the infection or involved with Walker's care at that time.

Walker also alleges that he was forced into the shower on October 15, 2020, but these allegations do not state an Eighth Amendment claim against any defendant. Walker alleges that Ivers ordered two prison officers[6] to move him into the shower, which was painful because he was made to bend at the hip. *Id.* at 15. A chair was set up in the shower, but Walker slid out of the chair and fell to the floor. Walker called for help, but the officers and unnamed medical personnel "refused" to help Walker. *Id.* However, Walker does not allege that Ivers deliberately ordered the officers to move him in a painful way, nor that Ivers herself directed others not to help Walker when he fell. Walker does not allege that any other defendant was involved in this incident.

### III. CLAIM AGAINST WEXFORD

Walker has alleged a plausible claim against Wexford, the private company contracted to provide medical services at the prison. A private company performing a state function can be held liable to the same extent as a municipal entity under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). *Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012). "Corporate liability exists "when execution of a [corporation's] policy or custom . . . inflicts the injury." *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). Walker alleges that his wound vacuum was stopped on March 1, 2019, ten days after his second surgery. When Walker asked why it was stopped, Ivers allegedly told him that "Wexford refused to pay for any more." Walker alleges that his infections worsened, and he became septic on March 13, 2019. These facts are sufficient

---

[6] The officers, Officer Shaw and Lt. Morgan, are not named as defendants.

6

to state an Eighth Amendment claim that Wexford's policy or practice dictated the removal of the vacuum even though the vacuum was still medically necessary, which made his infection worse.

### IV. RETALIATION CLAIM

Walker also asserts that several defendants retaliated against him, in violation of the First Amendment. "To prevail on his First Amendment retaliation claim, [a plaintiff] must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012). Walker appears to allege that several defendants denied him medical care because he filed grievances against them. However, there are no facts indicating that the grievances themselves affected any defendant's decisions about his care. Rather, the complaint alleges that the medical staff generally disbelieved Walker's complaints of pain from the start, and continued to do so despite the grievances he filed. Although Walker characterizes their actions as "retaliation," there are no facts indicating that this claim is based on anything other than Walker's speculation about the defendants' motives, so it cannot proceed. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level.").

### V. INJUNCTIVE RELIEF

Lastly, Walker seeks injunctive relief in the form of pain medication. Inmates are entitled to receive constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97,

104–05 (1976). They are "not entitled to demand specific care[, nor are they] entitled to the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Additionally,

> [t]he PLRA circumscribes the scope of the court's authority to enter an injunction in the corrections context. Where prison conditions are found to violate federal rights, remedial injunctive relief must be narrowly drawn, extend no further than necessary to correct the violation of the Federal right, and use the least intrusive means necessary to correct the violation of the Federal right.

*Westefer v. Neal*, 682 F.3d 679 (7th Cir. 2012) (quotation marks, brackets, and citations omitted). Therefore, the Court would not categorically order the use of a particular medication. Injunctive relief—if granted—would be limited to requiring that Walker be provided with constitutionally adequate pain management.

The Miami Correctional Facility Warden has both the authority and the responsibility to ensure that Walker receives constitutionally adequate medical care as required by the Eighth Amendment. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). Therefore, the Warden will be added as a defendant, and Walker will be allowed to proceed on an official capacity claim for permanent injunctive relief.

The court also construes Walker's request for pain medication as a request for a preliminary injunction. Although such a request is properly filed as a separate motion, *see* N.D. Ind. L.R. 65-1(a), the court considers the request because Walker is proceeding without a lawyer. "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). "Mandatory preliminary injunctions – those requiring an affirmative act by the defendant – are ordinarily

8

cautiously viewed and sparingly issued [because] review of a preliminary injunction is even more searching when the injunction is mandatory rather than prohibitory in nature." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). It is unclear if Walker can meet this burden, but the complaint will be separately docketed as a preliminary injunction and the Miami Correctional Facility Warden will be ordered to respond to it.

For these reasons, the court:

(1) DIRECTS the clerk to add the Miami Correctional Facility Warden as a defendant;

(2) DIRECTS the clerk to separately docket the amended complaint (ECF 6) as a motion for a preliminary injunction;

(3) GRANTS Allan Walker leave to proceed against the Miami Correctional Facility Warden in an official capacity to obtain injunctive relief for constitutionally adequate pain management for his hip injuries;

(4) GRANTS Allan Walker leave to proceed against Dr. Merondit, Dr. Keenzly, and Kim Myers, in their individual capacities, for compensatory and punitive damages for failing to provide adequate medical care for infections to his left hip, and adequate pain management for injuries to his left hip, during his recovery from his February 7, 2019, and February 21, 2019, surgeries, in violation of the Eighth Amendment;

(5) GRANTS Allan Walker leave to proceed against Dr. Merondit, Dr. Keenzly, and Kim Myers, in their individual capacities, for compensatory and punitive damages for failing to provide adequate physical therapy and pain management for injuries to his left hip, during his recovery from his July 1, 2020, surgery;

(6) GRANTS Allan Walker leave to proceed against Shalana Seifert, Vernie Fanning, and LeeAnn Ivers, in their individual capacities, for compensatory and punitive damages for declining to provide for changing of bandages and bedding and adequate facilities for bathing between September 29, 2020, and October 9, 2020, despite his infected wounds, in violation of the Eighth Amendment;

(7) GRANTS Allan Walker leave to proceed against Wexford for compensatory and punitive damages for its policy and practice of violating the Eighth Amendment by discontinuing the use of a wound vacuum on infected wounds where the wound vacuum remains medically necessary;

(8) DISMISSES all other claims;

(9) DISMISSES defendants Gena S. and Nate;

(10) DIRECTS the clerk to request waiver of service from (and if necessary, the United States Marshals Service to serve process on) the following defendants, with a copy of this order and the amended complaint (ECF 6), pursuant to 28 U.S.C. § 1915(d):

    a. the Miami Correctional Facility Warden at the Indiana Department of Correction;

    b. Wexford of Indiana, LLC, Dr. Merondit, Dr. Keenzly, Kim Myers, LeeAnn Ivers, Vernie Fanning, and Shalana Seifert, at Wexford of Indiana, LLC;

(11) DIRECTS the clerk to fax or email a copy of the same documents to the Miami Correctional Facility Warden at the Miami Correctional Facility;

(12) ORDERS the Indiana Department of Correction and Wexford of Indiana, LLC, to provide the United States Marshals Service with the full name, date of birth, social security number, last employment date, work location, and last known home address of any defendant who does not waive service if it has such information;

(13) DIRECTS the United States Marshals Service to serve process pursuant to 28 U.S.C. § 1915(d) on the Miami Correctional Facility Warden by **April 2, 2021**, if an entry of appearance has not been entered by **March 26, 2021**;

(14) ORDERS the Miami Correctional Facility Warden to file and serve a response to the preliminary injunction, as soon as possible but not later than **April 9, 2021**, with supporting medical documentation and declarations from other staff as necessary describing/explaining how Allan Walker's pain is being treated in a manner that comports with the Eighth Amendment's requirements; and

(15) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), the Miami Correctional Facility Warden, Dr. Merondit, Dr. Keenzly, Kim Myers, LeeAnn Ivers, Vernie Fanning, Shalana Seifert, and Wexford to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on March 3, 2021.

s/ JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT

11