UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ALLAN WALKER,

        Plaintiff,

           v.                    CAUSE NO. 3:20-CV-1020-JD-MGG

WEXFORD, et al.,

        Defendants.

OPINION AND ORDER

Allan Walker, an inmate at Miami Correctional Facility ("Miami") proceeding without a lawyer, filed a motion for preliminary injunctive relief alleging that he is not receiving adequate pain management for injuries to his hip. ECF 11. The warden at Miami has filed a response. ECF 25. Walker has not filed a reply and the time to do so has passed.

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted). To obtain a preliminary injunction, the moving party must show: (1) he will suffer irreparable harm before the final resolution of his claims; (2) available remedies at law are inadequate; and (3) he has a likelihood of success on the merits. *See BBL, Inc. v. City of Angola*, 809 F.3d 317, 323–24 (7th Cir. 2015).

Although inmates are entitled to constitutionally adequate medical care, they are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d

954, 965 (7th Cir. 2019), nor to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267. Mere disagreement with a medical professional about the best course of treatment does not establish an Eighth Amendment violation. *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003). Instead, the court must "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and quotation marks omitted).

Walker alleges that after he was hospitalized for an infection in April 2019, the Miami medical staff refused him pain medication despite his severe pain; that after a hip surgery on July 1, 2020, the medical staff refused him pain medication and physical therapy and refused to change his bandages; and that he remains in pain and is not receiving pain medication. *See id.* at 1-3, 7-8. The only issue relevant to this motion is whether he is currently receiving adequate pain management; however, to provide context, the court reviews Walker's recent treatment history.

## I.     WALKER'S INJURIES

The warden has filed a response and over 3,000 pages of medical records documenting Walker's treatment since January 2019. They indicate that Walker has been paraplegic since at least 2011, but still "has use of upper extremities." ECF 26 at 15, 20. In January 2019, he was discovered to have pressure sores and ulcers on his hips and buttocks. *Id.* at 13, 19, 26. Over the following weeks, the Miami medical staff attempted to treat the wounds, but several of them became infected. *See id.* at 13-127. On March 13,

2019, he was sent to a hospital, and six days later he was discharged having been treated for sepsis, superficial vein thrombosis, and anemia. *Id.* at 273, 280. He was prescribed hydrocodone, an opioid pain medication, for three days, in addition to the other treatments recommended by the hospital. *Id.* at 279, 283. He was also given Ultram, another pain relief medication, at the prison. *Id.* at 362, 370, 452. The records do not show that Walker was denied pain medication during this time.

Walker was sent back to the hospital from April 7 to April 12, 2019, where he was diagnosed with bacteremia and a urinary tract infection. *Id.* at 474-75. The prison medical staff noted that he frequently undermined the nurses' efforts to bathe him, clean his wounds, and change his dressings, which was making his infections worse. *See, e.g,* ECF 26 at 480, 483, 484 ("Offender waited until after he knew that the nurse on duty did not have anyone to help her [before requesting help bathing] . . . he is playing games with staff."); 493, 496 ("After explaining to offender how his wounds could be cleaned & wound care provided . . . offender refused"); 517 ("When asked about changing dressing . . . offender covered up and acted like he did not hear me."). Walker received Tylenol in addition to his prescribed medications, *id.* at 496, and the records do not show that he was denied medication.

On May 1, 2019, he was taken to the hospital again, and diagnosed with anemia, urinary tract infection, and acute renal insufficiency. *Id.* at 556. At the hospital, he was "engaging in therapy and eating like a horse then as soon as he [k]new he was being [returned] to prison he refused everything." *Id.* at 601, 605. When he returned to prison on May 9, 2019, he refused to drink fluids and cooperate with his wound care and

hygiene. *See id*. at 605-619. On May 10, 2019, nurse Kimberly Myers wrote that Walker

"refuses to help himself or become active in any of his daily care . . . His refusals are

purposeful but his reasoning is unknown." *Id*. at 605, 608.

On May 20, 2019, Walker complained of pain in his left hip, and was given

Mobic, a pain reliever. ECF 26-1 at 36. On May 22, 2019, he asked for "something

stronger" and two days later he was given Ultram again. *Id*. at 43, 57. On June 6, 2019,

the Ultram dosage was increased from twice a day to three times a day. *Id*. at 121. He

continued to complain of pain, and on July 1, 2019, he was prescribed hydrocodone

again. *Id.* at 238. He continued to receive hydrocodone through February 10, 2020, and

Tylenol was restarted on January 15, 2020. *See id*. at 430, ECF 26-2 at 405; ECF 26-3 at 5,

355. The records do not indicate that Walker objected to the medication or that it failed

to address his pain. Meanwhile, his refusals to cooperate with treatment continued to

undermine his condition. *See* ECF 26-2 at 204 ("His wounds are healing and it is like he

is sabotaging the improvements . . . his refusals are causing damage to the small

incremental improvement seen.").

## II.     WALKER'S SURGERIES AND MEDICATION MANAGEMENT

On February 10, 2020, Walker underwent surgery to reconstruct his left hip. The

surgeon was able to "clean up the hip area and remove all of the jagged overgrowth

and spurring of the bone," but could not finish the procedure "due to too much bone

destruction." ECF 26-3 at 313. On February 19, 2020, Myers wrote: "He states he is still

in pain, [I] told him that the expectations are that since all the bone was cleaned up . . .

you should be able to slowly reduce the need for narcotics as the bones are no longer

grinding." *Id*. at 354. Walker's hydrocodone prescription was reduced to twice a day, down from three times a day. *Id*. at 391-92. He still would not cooperate with wound treatment and hygiene, and Myers wrote: "Refuses to be turned, refuses supplements for wound healing, refuses dressing changes more than half the time . . . If a person was in pain they would do everything they could to reduce the pain by healing themselves. He is doing nothing but laying in bed and rotting." *Id*. at 395.

On April 1, 2020, Walker was taken off hydrocodone and given Tylenol-codeine #3 instead. ECF 26-4 at 77-78. Myers wrote: "[Patient] tells me that the [Tylenol-codeine] pills are not helping him at all and he is in severe pain. I again told him that he is no longer having the [bone and tissue problems] therefore whatever pain he had should be resolved." A nursing assistant who helped bathe him and changed his bedding told Myers she had never seen him express pain during this process. Myers concluded that Walker "wants the narcotics to improve his mood and not for physical pain." *Id*. at 83. The nurses repeatedly noted that despite his complaints, he seemed not to be in pain. *See, e.g., id.* at 143, 146, 148. On May 11, 2020, Walker requested more pain medication, and the medical staff prescribed Pamelor. *Id*. at 192, 197. Walker was "upset," and said he wanted hydrocodone again. *Id*. at 204. The staff refused, noting that he had been caught "snorting his psych meds and trafficking with other inmates in the infirmary." *Id*. at 216, 259.

With his hydrocodone prescription discontinued, Walker rotated through various pain medications, generally receiving narcotics only when prescribed by a

specialist.[1] When he was not receiving narcotics, he was still receiving Pamelor and acetaminophen. *See* ECF 26-5 at 54-55, 184. After another hip procedure on September 22, 2020, he received a month's prescription of hydrocodone, on the orders of his orthopedic surgeon. *Id*. at 270, 295. When that prescription finished, he received Tylenol-codeine the next month, then Naprosyn the following month. *Id*. at 421, 536-37. After going to the hospital from November 24, 2020 to December 1, 2020, he was given seven days of oxycodone. ECF 26-6 at 36, 85-88. On January 20, 2021, after another hip procedure, he received a three-month prescription of gabapentin and two weeks of oxycodone. *Id*. at 295-96, 304, 395, 407.

Walker's current treatment continues along a similar path. As of March 30, 2021, he is taking Trileptal, gabapentin, and Tylenol for his pain. ECF 26-7 at 204. "He complains of left hip pain . . . [but] does not appear in discomfort." *Id*. at 228. Although his hygiene and wound care have "improved," he still has "days of noncompliance." *See id*. at 162, 197, 202, 222, 233.

### III.   ANALYSIS

Walker initially alleged that he was not receiving medication for his pain. However, he did not file a reply to the warden's response, and has not disputed the accuracy of the medical records. Those records indicate that Walker has been receiving constitutionally adequate pain management, including medication. He is being

---

[1] For example, on June 9, 2020, after a follow-up appointment with his surgeon, he was given a one-week prescription of hydrocodone. ECF 26-4 at 264. On July 5, after another hip surgery, he was given another ten-day hydrocodone prescription. *Id*. at 311, 324. On July 28 he was given Tylenol-codeine #3 for fourteen days, and on August 22 he received it for ten days. ECF 26-5 at 5, 148.

continually examined, diagnosed, and treated, although the record strongly indicates that he has undermined his recovery by refusing to cooperate with treatment and hygiene. *See*, *e.g.*, ECF 26 at 605; ECF 26-2 at 204; ECF 26-2 at 271; ECF 26-3 at 395.

Walker is objecting because he would prefer different pain medications than the ones he is getting, but that alone is not a basis for a constitutional claim:

> Whether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations. A prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment is so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition.

> *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) (quotation marks and citation

omitted). Walker has provided no evidence that the Miami medical staff's management of his pain is inappropriate.

Specifically, the record indicates that the medical staff ended Walker's long-term hydrocodone prescription because they determined that surgeries had addressed the underlying cause of pain, that he was exaggerating his complaints, and that whatever pain he had could be addressed with other medications. There is no evidence that a competent medical professional would not make the same judgments. *Walker*, 940 F.3d at 965. Walker continues to receive pain medication, including hydrocodone when prescribed by his surgeons. The record does not show that he is being intentionally mistreated, or that the medication changes have made his condition worse. *Snipes*, 95 F.3d at 592.

For these reasons, the court DENIES the motion for a preliminary injunction (ECF 11).

SO ORDERED on May 6, 2021

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT