UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ALLAN WALKER, <br><br> Plaintiff, <br><br> v. <br><br> WEXFORD, et al., <br><br> Defendants. | CAUSE NO. 3:20-CV-1020-JD |

OPINION AND ORDER

Allan Walker, a prisoner without a lawyer, is proceeding in this case on six claims. ECF 51. First, he is proceeding "against the Miami Correctional Facility Warden in an official capacity to obtain injunctive relief for constitutionally adequate pain management for his hip injuries[.]" *Id.* at 5. Second, he is proceeding against Dr. Noe Marandet "for compensatory and punitive damages for denying Walker adequate medical care by performing his February 7, 2019 surgery under unsterile conditions, leading to the infection of a wound or wounds in his left hip, in violation of the Eighth Amendment[.]" *Id.* Third, he is proceeding against Dr. Marandet, Dr. Carl Kuenzli, and Nurse Kimberly Myers "for compensatory and punitive damages for failing to provide adequate medical care for infections to his left hip, and adequate pain management for injuries to his left hip, during his recovery from his February 7, 2019, and February 21, 2019, surgeries, in violation of the Eighth Amendment[.]" *Id.* at 6. Fourth, he is proceeding against Dr. Marandet, Dr. Kuenzli, and Nurse Myers "for compensatory and punitive damages for failing to provide adequate physical therapy and pain

management for injuries to his left hip, during his recovery from his July 1, 2020, surgery[.]" *Id.* Fifth, he is proceeding against Nurse Shalana Seifert, Nurse Vernia Fanning, Nurse LeeAnn Ivers, Nursing Assistant Jena Schlarf, and Nurse Pamela Cool "for compensatory and punitive damages for declining to provide for changing of bandages and bedding and adequate facilities for bathing between September 29, 2020, and October 9, 2020, despite his infected wounds, in violation of the Eighth Amendment[.]" *Id.* Sixth, he is proceeding "against Wexford for compensatory and punitive damages for its policy and practice of violating the Eighth Amendment by discontinuing the use of a wound vacuum on infected wounds where the wound vacuum remains medically necessary[.]" *Id.*

Warden English and the medical defendants filed separate motions for summary judgment. ECF 167, 174. Walker filed a response to the medical defendants' summary judgment motion, and the medical defendants filed a reply. ECF 184, 186.[1] The court will now rule on both summary judgment motions.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine

---

[1] Warden English provided Walker the notice required by N.D. Ind. L.R. 56-1(a)(4), informing him of the need to file a response brief within 28 days. ECF 170. However, Walker has not responded to Warden English's summary judgment motion, and the time for doing so has expired. Nevertheless, the court will consider the arguments Walker raises in his response to the medical defendants' summary judgment motion in ruling on Warden English's summary judgment motion.

issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). However, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009).

Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To be held liable for deliberate indifference to an inmate's medical needs, a medical professional must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008).

Furthermore, a prisoner is not entitled to demand specific care, nor is he entitled to the "best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). "Whether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). Where the defendants have provided some level

of care for a prisoner's medical condition, in order to establish deliberate indifference the prisoner must show that "the defendants' responses to [his condition] were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). A mere disagreement with medical professionals about the appropriate treatment does not amount to an Eighth Amendment violation. *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003).

    1.  <u>Arrival at MCF and discovery of ulcers</u>

The defendants provide affidavits and Walker's medical records, which show the following facts: Upon intake at Miami Correctional Facility ("MCF") in September 2018, it was noted Walker was a paraplegic unable to move his lower extremities. ECF 174-2 at 2. On January 11, 2019, an examination found Walker had developed decubitus ulcers, also known as pressure ulcers, on his right heel, right hip, left hip, and buttocks. *Id.*; ECF 26 at 8-25. Walker was admitted to the infirmary and met with Nurse Myers. *Id.* His condition had progressed to the point where his ability to independently complete activities of daily living was limited, and he was displaying symptoms of incontinence. *Id.* He was provided an air-flow mattress for 90 days, prescribed wet to dry dressing on open pressure wounds twice daily for thirty days, and scheduled for daily nursing assessments and twice weekly provider visits to monitor the developed ulcers. ECF 174-2 at 2-3. At the time of his admittance into the infirmary, he had a standing order for 600 mg Trileptal for pain relief. ECF 26 at 19-22. He also received orders for Tylenol and Meloxicam. *Id.* at 57, 123.

Shortly after his admittance into the infirmary, Walker became non-compliant with provider orders and began refusing to leave his bed or turn over to relieve pressure from his wounds. ECF 26 at 36; ECF 174-2 at 3. By January 14, 2019, Walker's wounds were infected exhibiting a yellow drainage and he was prescribed oral Cleocin, an antibiotic used to stop the growth of bacteria. ECF 26 at 39; ECF 174-2 at 3. On January 16, 2019, Dr. Marandet ordered that Xeroform dressing be applied to Walker's wounds to keep the wound environment moist and aid with healing. ECF 26 at 52; ECF 174-2 at 3. Walker was noted being uncooperative in helping with the healing process, not bathing as often as he should, and refusing to move his body to allow medical staff to evaluate his sores. *Id.* The wounds on his left side appeared burnt and had popped blisters which were draining a yellowish fluid. *Id.* On January 17, 2019, Dr. Marandet switched Walker from oral antibiotics to IV antibiotics to combat the infection in his ulcers. ECF 26 at 58-67; ECF 174-2 at 3. That same day, Walker refused a dressing change and signed a refusal form. ECF 26 at 69. On January 19, 2019, Walker refused instructions to get out of bed and relieve pressure on his wounds, stating he had no motivation to get out of bed. *Id.* at 78. Over the next couple weeks, it was noted Walker was refusing instructions to turn from side to side and to remove trash and other items from his bed. *Id.* at 82, 101. It was also noted he was not completing a bowel program and was having bowel movements on himself. *Id.* at 101.

Though Walker's wounds began to show signs of improvement, on January 30, 2019, it was noted his thigh wound smelled pseudomonas. ECF 26 at 116-18; ECF 174-2

5

at 3. A culture was ordered and he was started on Cipro and penicillin[2] to fight the bacterial infection. *Id.* On February 4, 2019, the infection appeared to be resolved and Dr. Marandet decided to perform a wound debridement to remove dead skin around the wound. ECF 26 at 131-33; ECF 174-2 at 3.

### 2. February 7, 2019, debridement

Prior to the debridement, a wound vacuum was requested for use post-surgery to assist with healing. ECF 174-2 at 4. On February 7, 2019, informed consent for the debridement of Walker's pressure ulcer was obtained. *Id.*; ECF 26 at 140. The informed consent, which Walker signed, informed him the doctor would cut away dead tissue that was not healing and listed infection as a potential complication. *Id.* The informed consent also informed Walker the procedure would be sterile, meaning the procedure would be performed using sterilized tools. *Id.* A sterile procedure is different from a sterile field, in which a surgery is performed in a designated area free of microbes and other pathogens that can infect someone. ECF 174-2 at 4. A sterilized procedure reduces, but does not eliminate, the risk of infection. *Id.* During the procedure, Walker was prepped with Betadine solution and draped appropriately. ECF 174-2 at 4-5; ECF 26 at 141-43. The debridement was completed bedside at MCF using sterile instruments, and dressing and gauze were applied. *Id.* There were no complications. *Id.*

On the same day the debridement took place, a wound culture was ordered. ECF 26 at 144; ECF 174-2 at 5. A strong penicillin antibiotic called Augmentin was prescribed

---

[2] Nurse Myers noted in Walker's medical record that "He took Augmentin in 2011 with no reactions so there should not be an issue with the [penicillin]." ECF 26 at 116.

6

for fifteen days to head off any potential infection, and the use of a wound vacuum was approved. *Id.* While waiting for the wound vacuum to arrive, Walker's left hip utilized wet to dry dressings, but he was resistant to being turned from side to side to relieve pressure on the wounds. *Id.* On February 13, 2019, it was noted Walker was not responding to the Augmentin and the non-formulary antibiotic Gentamicin was prescribed instead. ECF 26 at 162; ECF 174-2 at 5. On February 15, 2019, the wound vacuum arrived and was placed on Walker's left hip. ECF 26 at 165-67; ECF 174-2 at 6. On February 19, 2019, the wound vacuum was changed and reattached, and it was noted a second debridement may be needed before the next change. ECF 26 at 186.

    3. February 21, 2019, second debridement

On February 21, 2019, informed consent was obtained for a second debridement of Walker's ulcers. ECF 26 at 195; ECF 174-2 at 6. A bedside debridement of the left buttock was completed under local anesthesia, and the wound vacuum was reapplied to Walker's left hip to aid with healing. ECF 26 at 196-98; ECF 174-2 at 6. Walker continued to receive Gentamicin through an IV to aid with infections. *Id.* His condition continued to improve, and on February 24, 2019, he was able to participate in outside recreation with self-propelled transport. ECF 26 at 208; ECF 174-2 at 6-7. In March 2019, Walker's wound vacuum was removed and he was started on a new treatment regimen under the advice of a wound specialist by which his wounds were cleaned with antimicrobial soap, dried, and a barrier spray was used with Puracyn Plus gauze. ECF 26 at 244; ECF 174-2 at 7. He remained in the infirmary and had continual access to medical staff, and his wounds continued to be changed with oral and IV antibiotics

being provided. ECF 174-2 at 7. Because neither party disputes these facts, the court accepts them as undisputed.

    4. Claims related to February 7 and February 21 surgeries

Walker is proceeding on two claims related to his wound debridements. First, he is proceeding against Dr. Marandet "for compensatory and punitive damages for denying Walker adequate medical care by performing his February 7, 2019 surgery under unsterile conditions, leading to the infection of a wound or wounds in his left hip, in violation of the Eighth Amendment[.]" ECF 51 at 5. Dr. Marandet argues summary judgment is warranted in his favor because he performed a sterile procedure that minimized the risk of infection, and Walker's belief the procedure was not sterile is not supported by medical evidence. ECF 176 at 6-7. In response, Walker argues Dr. Marandet provided constitutionally inadequate treatment by performing the February 7 surgery bedside at MCF rather than in a hospital setting, as his bed sheets at MCF were soiled and other patients were within the vicinity which greatly increased his risk of infection. ECF 184 at 2-4.

Here, Walker's belief the February 7 debridement should have been completed in a hospital setting is insufficient to show an Eighth Amendment violation. It is undisputed Dr. Marandet performed the surgery bedside at MCF using sterilized instruments, and Walker provides no evidence this was a "departure from accepted professional judgment, practice, or standards" in the medical field. Specifically, Walker provides no evidence other than his own speculation that it was inappropriate to perform the surgery bedside. Nurse Myers attests that "[d]ebridement of a decubitus

8

ulcer, such as that had by Mr. Walker, can competently be completed in an outpatient setting, such as bedside at MCF," and Walker offers no evidence disputing this attestation. ECF 174-2 at 5. Moreover, the National Institute of Health states surgical debridement can be performed in any location with adequate anesthesia and the ability to control perioperative complications. *See Wound Debridement*, available at [Wound Debridement - StatPearls - NCBI Bookshelf (nih.gov)](last accessed January 4, 2024) (surgical debridement with sharp instruments "can be done bedside, in the office or wound care center, or the operating room, depending on the adequacy of anesthesia and the ability to control perioperative complications like bleeding."). Because Walker provides no evidence it was "plainly inappropriate" for Dr. Marandet to perform the February 7 surgery bedside at MCF rather than at a hospital, summary judgment is warranted in favor of Dr. Marandet on this claim.

Second, Walker is proceeding against Dr. Marandet, Dr. Kuenzli, and Nurse Myers "for compensatory and punitive damages for failing to provide adequate medical care for infections to his left hip, and adequate pain management for injuries to his left hip, during his recovery from his February 7, 2019, and February 21, 2019, surgeries, in violation of the Eighth Amendment[.]" ECF 51 at 6. The defendants argue they provided constitutionally adequate care for Walker's wounds by providing pain medication, antibiotics, a wound vacuum, and consulting with and following the recommendations from a wound specialist. ECF 176 at 7-8. Walker responds the post-surgery treatment he received was constitutionally inadequate because the defendants provided ineffective antibiotics and believed he was faking his pain. ECF 184 at 4-6.

9

Here, it is undisputed Walker experienced infections before, during, and after his February 7 and February 21 surgeries, which the defendants treated with several different types of oral and IV antibiotics including Cipro, Cleocin, Augmentin and Gentamicin. It is also undisputed the defendants ordered a wound culture, applied a wound vacuum, applied wet to dry dressings, and consulted with and followed recommendations from a wound specialist to help Walker's wounds heal.

In his response, Walker provides no evidence the post-surgery treatment he received was constitutionally inadequate. He argues the defendants were deliberately indifferent to his infections because they provided a penicillin antibiotic, which he is allergic to, and other antibiotics that his infections resisted. ECF 184 at 4. But Walker provides no medical evidence that he is allergic to penicillin or that the defendants knew he had a penicillin allergy. Regardless, while it appears the defendants provided him a penicillin antibiotic called Augmentin for a few days before switching to Gentamicin, there is no evidence he suffered any adverse effects from receiving Augmentin. Moreover, while Walker argues his infections resisted the other antibiotics provided by the defendants, there is no indication the defendants acted outside the realm of professional judgment when they selected these antibiotics. Infections are a known risk of ulcers and debridement procedures, and it is undisputed Walker's infections healed over time. Walker provides no evidence the antibiotics provided by the defendants were in any way constitutionally inadequate.

Regarding his pain relief, Walker argues the defendants were deliberately indifferent because he experienced pain after his surgeries and Nurse Myers believed he

10

was faking his pain to obtain pain medications. ECF 184 at 5-6. However, Walker does not dispute he regularly received Trileptal, Tylenol, and Meloxicam for pain relief, and he provides no evidence these medications were constitutionally inadequate. The fact Walker still experienced some pain while taking these medications does not show a constitutional violation. *See Snipes*, 95 F.3d at 592 ("[t]o say the Eighth Amendment requires prison doctors to keep an inmate pain-free in the aftermath of proper medical treatment would be absurd."). And Nurse Myers' purported belief that Walker was faking his pain is irrelevant, as it is undisputed Walker regularly received pain medication.

Accordingly, because Walker provides no evidence the post-surgery treatment he received was constitutionally inadequate, summary judgment is warranted in favor of the defendants on this claim.

    5. <u>July 1, 2020, surgery and post-surgery treatment</u>

The defendants provide Walker's medical records and affidavits from Nurse Myers and Nurse Ivers, which show the following facts: On July 1, 2020, Walker had a left-hip arthrofibrosis completed by orthopedic specialist Dr. Lawrence Wurtz, which resulted in him having staples in his left hip. ECF 26-4 at 303-08; ECF 174-2 at 8. His discharge notes did not include a request for physical therapy. *Id*. Upon his return to MCF on July 4, 2020, he was housed in the infirmary and given Tylenol, Oxycodone, and Celecoxib (a nonsteroidal anti-inflammatory). ECF 26-4 at 324-26; ECF 174-2 at 8-9. His staples were expected to remain in for approximately two weeks, but stayed in longer due to infection and concern of reopening the wounds. ECF 174-2 at 9. In

consultation with off-site providers, it was decided to keep the staples in place. *Id.* His infections continued to progress despite medications targeting the bacterial growth. *Id.* On August 19, 2020, he was transported off-site for further care at Dukes Memorial Hospital, where he was diagnosed with anemia and returned to MCF's infirmary. *Id.* On September 22, 2020, his staples were removed. *Id.* The delay in removal of the staples due to persistent infection resulted in overgrowth of skin. *Id.* Walker was instructed on home exercises to increase his mobility. *Id.*

In September 2022, Dr. Wurtz indicated that as part of Walker's rehab he needed to move and rotate his body and participate in activities, such as showers with the assistance of a Hoyer Lift or shower chair. ECF 26-5 at 265-67; ECF 174-2 at 9-10; ECF 174-3 at 4. MCF's nursing staff wrote to Dr. Wurtz to confirm that Walker could shower using a Hoyer lift or shower chair. ECF 26-5 at 267; ECF 174-3 at 6. However, Walker routinely declined to move and rotate his body and refused to shower, instead demanding a bedside water basin for personal bathing. ECF 26-4 at 337, 344-46, 359-60, 363, 366, 369; ECF 26-5 at 269, 274, 277, 293, 303, 306, 314-19, 328-31, 333, 336, 339-40, 358-59, 364, 369-70, 374-75, 391; ECF 174-3 at 4-6. Walker did not have an order for a bedside water basin, but one was occasionally provided to encourage him to clean. ECF 174-3 at 6. Walker's bandages were changed on various occasions during this time period, but he often refused any wound care. *Id.* at 4-5; ECF 26-5 at 275, 279-80, 284, 318-19, 322-23, 331, 333, 339-40, 346. Because neither party disputes these facts, the court accepts them as undisputed.

12

6. <u>Claims related to July 1 surgery and post-surgery treatment</u>

Walker is proceeding on two claims related to his July 1 surgery and post-surgery treatment. First, he is proceeding against Dr. Marandet, Dr. Kuenzli, and Nurse Myers "in their individual capacities for compensatory and punitive damages for failing to provide adequate physical therapy and pain management for injuries to his left hip, during his recovery from his July 1, 2020, surgery[.]" ECF 51 at 6. The defendants argue summary judgment is warranted in their favor because they adhered to all of Dr. Wurtz' post-surgery treatment recommendations, which did not include an order for physical therapy. ECF 176 at 9. Walker responds the defendants were deliberately indifferent for failing to provide him physical therapy, which caused him to heal improperly from his surgery. ECF 184 at 6-8.

Here, Walker provides no evidence any of his off-site physicians ever recommended he receive physical therapy. He asserts that "upon leaving the hospital I was told that in order to achieve my goal of being able to sit up and take care of myself I needed to have therapy when I return to MCF," but he does not explain who told him this information or whether that information was ever relayed to MCF's medical staff. ECF 184 at 6. Nurse Myers attests Walker's off-site providers did not recommend physical therapy, and physical therapy could not be considered while he had open wounds in both hips. ECF 174-2 at 9. Moreover, the undisputed facts show Walker's discharge notes did not include any order for physical therapy but instead recommended he move his body and participate in receiving showers, which he refused to do. *See* ECF 26-4 at 303-08; ECF 26-5 at 265-67; ECF 174-2 at 9-10. No reasonable jury

13

could conclude the defendants were deliberately indifferent for failing to provide Walker physical therapy where his discharge notes did not recommend physical therapy and it is undisputed he failed to participate in other recommended activities meant to assist in the healing process. *See Rodriguez v. Briley*, 403 F.3d 952, 953 (7th Cir. 2005) (an inmate cannot "be permitted to engineer an Eighth Amendment violation"). And as for Walker's claim he received inadequate pain management, it is undisputed he regularly received Tylenol, Oxycodone, and Celecoxib for the pain associated with his hip surgery, and he provides no evidence this medication was constitutionally inadequate. ECF 26-4 at 324-26. Summary judgment is therefore warranted in favor of the defendants on this claim.

Second, Walker is proceeding against Nurse Seifert, Nurse Fanning, Nurse Ivers, Nursing Assistant Schlarf, and Nurse Cool "for compensatory and punitive damages for declining to provide for changing of bandages and bedding and adequate facilities for bathing between September 29, 2020, and October 9, 2020, despite his infected wounds, in violation of the Eighth Amendment[.]" ECF 51 at 6. The defendants argue summary judgment is warranted in their favor because they consistently offered Walker bandage and bedding changes and showers consistent with Dr. Wurtz' orders, but Walker regularly refused to shower or receive any wound care. ECF 176 at 10-12. Walker responds the nursing staff did not regularly change his bandages and bedding, and should have provided him with a bedside water basin for bathing because using a shower chair caused him pain. ECF 184 at 10-16.

Here, Walker does not dispute the defendants' evidence that he regularly refused showers and wound care. While Walker may have preferred to bathe with a bedside basin rather than use the shower, his disagreement with medical professionals about the appropriate treatment does not amount to an Eighth Amendment violation. *Ciarpaglini*, 352 F.3d at 331. Showering may have caused Walker to experience more pain than washing with a bedside basin, but Dr. Wurtz informed nursing staff that forcing Walker to move his body and perform daily activities was beneficial to the healing process, and it is undisputed Walker was consistently provided pain medication. Thus, the defendants did not violate Walker's Eighth Amendment rights by offering him showers consistent with the orders of Dr. Wurtz. Walker also argues the nursing staff did not regularly change his bandages and bedding, but he does not dispute he regularly refused any wound care from the nursing staff. ECF 184 at 10-11; ECF 26-5 at 275, 279-80, 284, 318-19, 322-23, 331, 333, 339-40, 346; *see Rodriguez*, 403 F.3d at 953 (an inmate cannot "be permitted to engineer an Eighth Amendment violation"). Because the undisputed facts show the defendants consistently provided Walker reasonable medical treatment by offering wound care and showers consistent with the orders of Dr. Wurtz, summary judgment is warranted in favor of the defendants on this claim.

7. *Monell*[3] claim against Wexford

Walker is proceeding "against Wexford for compensatory and punitive damages for its policy and practice of violating the Eighth Amendment by discontinuing the use of a wound vacuum on infected wounds where the wound vacuum remains medically necessary[.]" ECF 51 at 6. A private company performing a state function, such as Wexford, can be held liable to the same extent as a municipal entity under *Monell*. *See Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012) (*Monell* framework applies to private company providing medical care at correctional facility). Under *Monell*, a municipality may only be held liable for constitutional violations caused by the municipality through its own policy, practice, or custom. *Monell*, 436 U.S. at 694. To recover under *Monell*, a plaintiff must establish that: (1) he suffered a deprivation of a federal right (2) as a result of an express municipal policy, a widespread custom, or a deliberate act of a decision-maker with final policymaking authority for the municipality that (3) was the proximate cause of his injury. *King v. Kramer*, 763 F.3d 635, 649 (7th Cir. 2014).

The defendants argue summary judgment is warranted in favor of Wexford because Walker has provided no evidence of any policy or practice related to wound vacuums. ECF 176 at 13-16. In his response, Walker argues Wexford is liable because "the defendants are all Wexford employees and Wexford bares superior liability for its employees." ECF 184 at 17. However, there is no respondeat superior liability under 42

---

[3] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

16

U.S.C. § 1983. *See Monell*, 436 U.S. at 691. Because Walker does not argue or provide any evidence that Wexford has a policy or practice related to wound vacuums, and instead argues only that Wexford is liable under a theory of respondeat superior, he cannot maintain a *Monell* claim against Wexford. Summary judgment is warranted in favor of Wexford on this claim.

    8.  <u>Injunctive relief claim against Warden English</u>

Walker is proceeding against Warden English "in an official capacity to obtain injunctive relief for constitutionally adequate pain management for his hip injuries[.]" ECF 51 at 5. Warden English argues summary judgment is warranted in his favor because there is no evidence Walker is currently receiving constitutionally inadequate pain medication for his hip injuries. He provides a copy of Walker's December 9, 2022, deposition, in which Walker testified his claims regarding inadequate pain medication began in January 2020 and ended prior to his July 2020 surgery. ECF 167-1 at 117-18. At the time of his deposition, Walker agreed he was actively receiving pain medications, including Norco. *Id.* at 5, 115, 119-20.

As noted above, Walker did not respond to Warden English's summary judgment motion. In his response to the medical defendants' summary judgment motion, Walker does not argue or provide any evidence he is currently receiving constitutionally inadequate pain medication for his hip injuries. Because it is undisputed Walker has regularly received pain medication at least since July 2020, and Walker provides no evidence the medications he is currently receiving are constitutionally inadequate, no reasonable factfinder could conclude he is currently

17

entitled to injunctive relief. Summary judgment is warranted in favor of Warden English on this claim.

For these reasons, the court:

(1) GRANTS Warden English's motion for summary judgment (ECF 167);

(2) GRANTS the medical defendants' motion for summary judgment (ECF 174); and

(3) DIRECTS the clerk to enter judgment in favor of the defendants and against Allan Walker and to close this case.

SO ORDERED on January 8, 2024

/s/JON E. DEGUILIO  
JUDGE  
UNITED STATES DISTRICT COURT